Mr. Goodman. Good morning, Your Honors. Judge Lynch, if it would be all right, I'd like to reserve one minute for rebuttal. Yes, certainly. May it please the Court. Good morning. My name is John Goodman, and I represent the defendant, Appellant Neil West. Your Honors, the United States v. Benedetti controls the outcome of the flight issue in this case. In Benedetti, this Court established a two-part test for admitting flight evidence. There has to be extrinsic evidence related to the crime charged, and even if there is, there's still a 403 balancing analysis. In Benedetti, the police showed up at the defendant's house with a search warrant. The defendant confessed. A couple of days later, his lawyer learned that there was a warrant for his arrest, and then called and said he's not going to be here because he's fled. And the defendant stayed away for four years. And the District Court said that's not enough to bring in the flight evidence. And the District Court excluded the evidence of flight until the defendant made it an issue during his case. As discussed more fully in my brief, the District Court in Maine analyzed a flight case with much more similar facts to Mr. West's case and excluded flight evidence applying Benedetti. Can I just ask, in Benedetti, the District Court made the ruling in favor of the defendant? Initially, yes, Your Honor. But here we would need to conclude that an opposite ruling would be an abuse. Yes, Your Honor. So how does Benedetti get us to that additional step, if you follow?  In Benedetti, there was an exercise of discretion to exclude the evidence by the District Court. Does that show that an opposite ruling would be an abuse of discretion? I understand, Your Honor. In this case, it's really the 403 analysis. Did Benedetti purport to rule as Judge Barron just said? It did not, did it? It merely found no abuse of discretion? Correct, Your Honor. I'm just trying to figure out how do you... I get the 403 balancing, but putting that aside, I think if I'm understanding the Maine District Court case, rather than just focusing on the balancing, it's suggesting there's just not enough... there has to be enough connection to flight to get it in. If you make a threshold argument based on what the District Court did in Benedetti, that there's not enough threshold evidence of flight. But there's more tied to the flight evidence here than there was in the Maine case, if I understand it. And yet, so the case looks, as you start off by saying, in a way a lot like Benedetti. But the problem is Benedetti was just an exercise of discretion to exclude. It doesn't tell us that it's an abuse of discretion not to exclude. So could you just help me square the circle with respect to the evidence of flight? I understand, and maybe I'm not articulating it well, Your Honor, but the abuse of discretion is to allow in the flight evidence when the weight of it was absolutely crushing to Mr. West. And it was a distinct event. It happened half an hour after the bank robbery. Unlike Wissek, that the court discussed at trial where the police see the robbers fleeing the bank, they're whipping in and out of traffic, all the cases cited by the government are similar to that. I guess what's hanging me up is just that point when you say it's a distinct event. Because you have the testimony from the co-conspirators saying that this was the getaway driver. So if that evidence is in, the evidence of him fleeing wouldn't necessarily be distinct. It would be a continuation demonstrating the truth or allowing a jury to conclude that what was being said by the driver being the getaway driver was true. After you answer, Judge Stahl has a question. Okay. Your Honor, the court ruled before any testimony that the flight evidence was coming in. And it was strictly based on the proffer that it had been stopped. It matched the description about a half an hour away from the bank, about a half an hour after the robbery. In Doe, you had a recorded call with the police. You had police officers witnessing the transaction, a police chase from the scene, and the defendants found nearby. And Judge Singel said under 403, that wasn't coming in because it was unfairly prejudicial. Judge Stahl. Well, here when you look at this case, there was a testimony of the two men who saw the getaway car, I think it was two men, and saw the robber in disguise hop into the car. Police immediately called. They have a description of the car. They chase the car. Your client tries to evade them for some distance. When they stop the car, they find not only evidence of the crime in the car, the disguise, they find money on him and so forth. When you look at the balancing of that, all evidence has bad evidence is one of those things that one would not like to see. But when you look at the balancing, what's the abuse of discretion here? Well, as Mr. West conceded in his motion to eliminate, your honor, all that evidence he understood was coming in. The chase itself, you know, 100 miles an hour, in and out of residential neighborhoods. But the judge redacted some of that. Some of it. And I think the fact that the judge wrestled with it and cut out some of it and then cut out more of it speaks to the fact, she herself described it as dizzying speeds. And the chase itself, it was way over the top. That's our argument. That's why it's an abuse of discretion. There was plenty of other evidence. What do you mean the chase was over the top? I'm sure you've viewed the video. It was highly inflammatory. It was scary. There were other reasons that Mr. West may have fled at the time. And you presented that to the jury. Why does that go to whether there was an abuse of discretion in admitting a highly redacted videotape that actually, in many ways, was a bending over backward to be sure there was no 403 prejudice? Your honor, it's our view that it was. It just, in a similar case. Do you want to move to your second issue? Yes, your honor. On the second issue, the statements were not hearsay. Neither one was being offered for the truth. I understand the argument that. What were they being offered for if not the truth? Well, they were being offered for the state of mind of the defendant at the time. The police are saying. Why is that relevant? It's relevant because the police are saying to him, there are witnesses at the scene that can identify you. And he says, no, there aren't. They cannot. And there are cameras at the hotel that will show that I was at the hotel. And unbeknownst to him, the cameras were broken. That's his defense. And he's trying to present that defense without getting on the witness stand by asserting these statements are true. Isn't that what happened here? No, your honor. And I have a difficult time with the proposition that Mr. West can't bring in evidence that's favorable to him as long as it comports with the rules. And these statements were not being offered for the truth of the statements themselves. They were just being offered for what he said. He asked the agents to go look at the video. And the agents did look at the video. How could we have to reach that issue? Because there was the alternate ruling by the district court that even if she were to view this not as hearsay, in the sake of completeness, were you to get this evidence in that the entire statement to the agent had to come in? If I can finish the thought, your honor. Mr. West was fine with the entire statement coming in short of the prior accessory after the fact conviction. That, again, was highly and unfairly prejudicial. Why? Why? Because it looked and talked and walked like a duck to a juror, to an unsophisticated person. It sure looked like he was the getaway driver in a bank robbery before, but that just wasn't the case. That wasn't what he pled to. That wasn't what he believed happened at the time. But it sure would have looked that way to a jury. I just have one final question on this. If we disagreed with you about whether the state of mind evidence was being offered for the truth of the matter or not, if we disagreed with you on that, could you still win on the ground that it was an abuse of discretion to require the prior arrest to be entered? Yes, the prior arrest should not have come in under any circumstances because it sure looked like this case, but it really wasn't. And that's laid out in the briefs. It did not come in. You're right. It did not come in. So this is what I'm wondering. Suppose your threshold premise is wrong. So this is hearsay. It is for the truth of the matter. Suppose we thought that. Can you still win on the ground that even though he should not have put you to the choice of saying this can only come in if the prior arrest gets entered? Or is it the argument you're making to us that the abuse was that this was offered just as state of mind evidence and it was wrong to then deny him the right to bring that in by threatening that you'd have to bring in the arrest? Well, I understand and I talked about Lucy in my brief, Your Honor, that you can't argue improper impeachment unless you take the stand. But the policy reasons behind Lucy don't apply here. The court knew exactly what Mr. West was going to offer for statements. The government made absolutely clear that the impeachment evidence was going to come in if the court allowed it to. Those risks laid out in Lucy to establish that rule weren't present in this case, and it's distinguishable. Okay. You have a minute left. Thank you. Good morning, Your Honors. May it please the Court, Renee Bunker on behalf of the United States. I, too, will start with the incredibly watered-down evidence of West's zealous flight from the police following the TD Bank robbery up in Lewiston. The record shows, if anything, not that the district court haphazardly admitted it at the last minute. The trial court did so after five pleadings, five conferences of counsel, and what shows an incredibly thoughtful, pervasive exercise of discretion. It wasn't just redacted. The district court, after that, in the second conference, making its rulings, ordered the government to basically gut the entire middle section, where the defendant is speeding in and out of traffic down a very narrow rural area of Sauca with a bike race and children and pedestrians sort of paulking the path as cars have to pull over to avoid. All gone. About half of the chase itself. Got it. And then we get into trial, the morning of trial. The government submitted its proposed, in an abundance of caution, redacted copy, and the district court took out another six minutes at the beginning of the trial. How much actual time was there left in what went to the jury? I had that down before. When I rewatched both tapes, the actual high-speed chase itself went from about eight minutes to about four minutes. And then there's a period before where the officer is pulling in behind the defendant. I know. The question was, was it four minutes that went to the jury? How much went to the jury? That was my question. I think it's approximately eight. No, the chase itself, the video itself as a district court comment went from about 30 minutes to, I think, about half of that. And I didn't time it exactly, but I focused on the timing when Trooper Davis initiated the stop to the actual chase, to the time when the defendant's arrested and being handcuffed. That, I think, went from about eight minutes to four minutes. Well, obviously the court was concerned enough about the effect of this chase to order it redacted significantly. Why was that enough? After all, the chase was really part of the push the government had to show that this man was the person who took part in the robbery. Two comments. I think that shows not only did the court water down the tape, but also Trooper Davis' testimony itself at the last minute, the government was ordered to dilute that as well, so there was no reference to the dramatic part of the most dramatic, the most prejudicial, as the trial court commented part of this evidence. It's probative. The court also followed Benedetti to the letter, conducted a very thorough Rule 403 balancing test, found it incredibly probative. And there is other evidence, but the case lot is clear. Benedetti, Lasek, DeSimone. What's probative about the length of the chase? I don't know what's probative about the length of it. That's what's prejudicial is the length of it. In other words, the person testifying, he was the getaway driver. If you showed 20 seconds of the last part of the car being pulled over and stopped, that would show, yeah, he was driving the car following the bank. Why do you have to show the additional four minutes of him evading police? What's probative about that? I think the duration of a chase and the severity, how desperate the getaway driver is to get his cohort sitting right in the seat with him, how desperate he is to get away from the police, following within less than three-fourths of an hour after the bank robbery, with just below $10,000 in robbery proceeds, sitting right in the van, and how desperate this man was trying to evade detection. I think the more severe and the longer the effort to elude the officer, arguably the more probative. Here it was just such reckless driving that the court, I think, supportably watered it down. A classic exercise of discretion. Clearly all evidence of this kind is very prejudicial. And the court obviously understood that it was prejudicial. But it's sort of an ad hoc determination that X amount of time is not so prejudicial that we can't let it in. What's the basis for making the determination that 10 minutes is okay, 12 minutes isn't okay? Where does the abuse of discretion not come in? Don't entrust to the trial judge on that. We certainly don't want to adopt a 10-minute rule or a 5-minute rule or any duration rule. And to the best of my knowledge, there's no support for that in the case law. Correct. I mean, correct. I've seen nothing. And I actually think, Judge Stahl, your question somewhat ignores where I think the trial court was focused more on the substance. It's the middle of that tape mostly. I mean, the beginning, that six minutes was when the trooper went and turned around, I think, and there's radio. But it's that middle portion that was over the top, perhaps not. Maybe it showed more probatively that the defendant was really desperate to elude the officers. But that part is really where there are bicycles on the side of the road and the cars are spinning around each other. All of that's gone. And the trooper wasn't allowed to testify to that. So I don't think it was a durational limitation that Judge Corson was doing here. It was more seen to be, except for maybe shortly in the beginning, more of a substantive thing to avoid an emotional response with bicyclists parking on the side of the getaway path. With that, I will respond to additional questions or turn to the statements issue. From my perspective, statements is fine for you to speak about. Oh, great. We maintain that the court got it right, that the West's attempt to admit his own post-arrest statements was an attempt to admit inadmissible hearsay, classic hearsay, and that counsel conceded in that first or one of the first conferences of counsel on this issue that the reason he was introduced in that statement about the motel cameras was, quote, if you go back and you look at these cameras, it will prove I am innocent. Same thing about nobody can identify West at or near the bank, because the defense was I'm not at or near the bank during the robbery. 8033, a closer look at 8033 in the case law makes clear that the relevant event for these types of statements, be they dying declarations or present sense impressions, would have been at the time of the robbery or during a high-speed chase, not in a post-arrest interview when the motive to fabricate often looms large. So West was essentially saying, as the trial court indicated, that statement about the motel is, in fact, a statement about a memory or belief to prove the fact remembered or believed. And that's exactly what 8033 accepts from this state-of-mind hearsay exception. The statement was essentially, I wasn't there at the bank, I was at the motel. These cameras will prove I was at the motel, offered to prove I was at the motel. And the same thing with regard to the statement about the nobody can come identify me as being at or near the bank. Do you want to address, please, Judge Barron's ultimate question, which is let's assume that this was hearsay. Does he still have an argument that the choice the district court put him to prejudiced him sufficiently that he has a remaining claim? Three brief comments. No. I think that threshold, if Mr. West loses that threshold ruling that district court made, that these were offered to prove the truth of the matter asserted, they just don't fit into 8033. There's no reason you get to district court's second ruling alternative, which from all that appears really appears to be an attempt to bend over backwards to just sort of give the defendant, look, if you really think these go to knowledge and you really think that I've got it wrong, fine, you get it in for a knowledge state-of-mind. But the government also gets this very significant, now probative,  I take the point that it may be that you have to get through the gateway of it being state-of-mind evidence in order for him to have any complaint. But I don't really understand the idea that the judge can throw in some condition that you have to then pay the price of having something come in if it's not probative. I mean, why for the sake of completeness would it be necessary to put in the arrest? How would that bear on state-of-mind? Maybe there's an argument that just didn't occur to me. What would it be that that would bear on the question of whether the evidence that he wanted in really was just state-of-mind evidence? I wouldn't characterize it as a punishment or a condition. The court put it under the rule of completeness. Essentially, Mr. West was trying to testify without having to take the stand. He repeatedly said as much. By admitting those statements, he's basically, one, putting his credibility at issue. Two, therefore rendering it's not an arrest. It was a prior accessory after the fact of robbery or eviction. He's also, therefore... But I guess I just don't understand. Imagine it's state-of-mind evidence. Right. How does that evidence that they said you've got to put that in, too, how would that be relevant to the state-of-mind question? Oh, highly relevant. In the government's view, it would go to knowledge. The defendant's knowledge that he, for the same reason 404B, whether he knew he was, in fact, driving a getaway car from a bank robbery or whether, in fact, he intended to drive Richard's away from the bank robbery or whether, as he suggested through opening statements, he had just been duped by Richard, whom he had known for eight years. I think the minute he puts that credibility issue and he's testifying without testifying, it was fair for the government to have an opportunity to say this prior conviction, accessory after the fact of bank robbery goes to knowledge, intent, and whether he was driving by mistake or not. And possibly to his state of mind at the time. I guess to me that's all state of mind, within that state of mind category. So, yes. Did that answer it? No. Thanks. With that, we ask that you affirm. Thank you. Mr. Goodman. Thank you, Your Honor. I would like to just turn back to the issue about Judge Dahl's question on, you know, what part of the chase is okay and what isn't okay and how much. All right. I'm struggling with why the fact that he gets out of the car and flees from the police officer into the woods is not relevant flight evidence. It's surely relevant, Your Honor, and it's surely probative, but folks do it all the time when their license is suspended, when they're drunk, when they've shoplifted, when they're on federal probation and they're afraid they're about to go back to prison for a long time. And that was the explanation you gave, but how does that make this not admissible? Because, again, it's over-the-top, highly and unfairly prejudicial. The police are screaming at him with guns. They drag him up to the car with his shirt off and his hair messy, and he looks like a bad dude. And the jury didn't need to see that. And it was just emotional, highly emotional and inflammatory evidence to show that. Okay. So it was how he looked. It wasn't the fact that he had gone running off into the woods. Well, it's not that one piece, Your Honor. It's many pieces. All right. Enough. Thank you. You're welcome, Your Honor. I have been hired to advocate for Mr. West, and that's why I'm here.